UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Unity Healthcare, Inc.,
Dr. Thomas H. Johnson Housing
With Services, Inc., and Beth Balenger,

       Plaintiffs,

v.

County of Hennepin, a government entity incorporated
under the laws of the State of Minnesota,
Hennepin County Human Services and Public Health
Department, Robin Rohr,
John Doe 1 through John Doe 15,
Jane Doe 16 through Jane Doe 30, Meridian Services, Inc.,
Lucy Stewart, individually, People Incorporated, Angela Reid,
individually, Carrie Davies, individually, Axis Healthcare, LLC,
and Mary Blegen, individually,

       Defendants.

Case No. 14-CV-114 (JNE/JJK)
ORDER

      Plaintiffs Unity Healthcare, Inc. ("Unity") and Dr. Thomas H. Johnson Housing With Services, Inc. ("HWS") are both Minnesota corporations owned by Plaintiff Beth Balenger, who is an African-American woman. Plaintiffs allege that Defendants discriminated against them in violation of several federal anti-discrimination laws and deprived them of their constitutional substantive and procedural due process rights. Plaintiffs also bring state anti-discrimination, defamation, and tortious interference claims. In a December 2, 2014 Order, the Court dismissed all the claims against Axis Healthcare, LLC ("Axis") and Mary Blegen and most of the claims against Meridian Services, Inc. ("Meridian"), Lucy Stewart, People Incorporated ("People"), Angela Reid, and Carrie Davies. This matter is now before the Court on a motion for judgment

on the pleadings filed by Hennepin County and Robin Rohr ("the County Defendants").[1] The County Defendants argue that most, if not all, of the claims against them fail under the reasoning in the December 2 Order. For the reasons provided below, their motion is granted in part and denied in part.

## BACKGROUND

Minnesota participates in federal-reimbursement programs, known generally as the waiver programs, which assist qualified individuals in obtaining community- and home-based healthcare. The Minnesota Department of Health ("MDH") licenses treatment providers in Minnesota and monitors their compliance with waiver program regulations. Unity provides healthcare services to its clients, some of whom participate in the federal waiver programs. HWS provides housing to these clients. Unity operates under home care licenses issued by MDH. Hennepin County has financial and administrative responsibilities for the waiver services, which include determining participant eligibility and arranging for case management services. Through a contract with Hennepin County, Meridian, People, and Axis provide case management services to waiver program participants, including to some of Unity's clients. Rohr, a Hennepin County employee, supervises the case managers. Through 2013, Hennepin County also had a contract with Unity and HWS known as the "Provider Agreement," which governed the amounts Unity and HWS could charge their clients and the standards they had to follow.

On October 11, 2011, MDH issued Unity a publicly available Notice of Noncompliance with Correction Orders and a Notice of Conditional License, which described multiple instances

---

[1] The motion is also brought by Defendant Hennepin County Human Services and Public Health Department. The department is not an entity capable of being sued. *See Everts v. U.S. Social Sec. Admin.*, Civ. No. 08-4690, 2009 WL 3062010, at *2 (D. Minn. Sept. 18, 2009). Accordingly, all claims against the department are dismissed.

2

when Unity failed to provide adequate health care and services. Under the conditional license, Unity was barred from admitting new clients and Unity had to disclose to each of its existing clients that MDH had taken this action against Unity. In December 2011, after MDH placed Unity on the conditional license, Hennepin County announced that it would not renew its Provider Agreement with Unity and HWS and that Unity's clients had to move. In December 2011 and early January 2012, Rohr instructed the case managers to relocate Unity's clients. In January 2012, Hennepin County agreed to extend Unity's and HWS's contract for three months, subject to weekly monitoring by the County. Three months later, Hennepin County indicated that the monitoring had gone well and extended the agreement through 2013. Despite the extension, the case managers continued their efforts to remove clients from Unity. MDH lifted the conditional license in the summer of 2013.

Plaintiffs filed their second amended complaint on October 24, 2014. On December 2, 2014, the Court issued an order with respect to Axis, Meridian, People, Blegen, Stewart, Davies, and Reid's motions to dismiss. On January 8, 2015, the County Defendants filed their motion for judgment on the pleadings in the second amended complaint.

## STANDARD OF REVIEW

A motion for judgment on the pleadings is reviewed under the same standard as a motion to dismiss for failure to state a claim. *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009). A court must accept the facts alleged in the complaint as true and grant all reasonable inferences in favor of the plaintiff. *Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009). Although a complaint need not contain detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## DISCUSSION

### A. Plaintiffs' Federal Law Claims

Plaintiffs allege race-based discrimination in violation of 42 U.S.C. §§ 1981, 1983, 1985(3), and 2000(d) ("Title VI"), as well as violations of their substantive and procedural due process rights. The December 2 Order dismissed all the federal claims against Axis, Meridian, People, and their case manager employees, Blegen, Stewart, Davies, and Reid.

Although the injuries giving rise to each race-based claim are somewhat different, intentional discrimination is an element of each one. *See Mumid v. Abraham Lincoln High School*, 618 F.3d 789, 794 (8th Cir. 2010) ("Title VI prohibits only intentional discrimination."); *King v. Hardesty*, 517 F.3d 1049, 1056–57 (8th Cir. 2008) (stating that a § 1981 and a § 1983 claim require proof of intentional discrimination), *abrogated on other grounds by Torgerson v. Rochester*, 643 F.3d 1031 (8th Cir. 2010); *Jensen v. Henderson*, 315 F.3d 854, 862 (8th Cir. 2002) ("Purposeful discrimination must be established for a party to succeed on a § 1985(3) claim."). The December 2 Order found that Plaintiffs' complaint did not support an inference of race discrimination because there were no allegations showing direct evidence of discrimination or showing that Plaintiffs and their comparators were similarly situated. Plaintiffs do not dispute

4

that their discrimination claims against the County Defendants fail under the reasoning in the December 2 Order. Instead, they argue that the order was wrong.

Plaintiffs rely on *Johnson v. City of Shelby*, 135 S. Ct. 346 (2014), which held that federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Id.* at 346. However, in the December 2 Order, the Court did not find that Plaintiffs' complaint was deficient for improperly stating the legal theory. Rather, the Court found that the complaint did not plead facts to support a plausible inference of race discrimination under any legal theory.

Plaintiffs also argue that their allegations regarding similarly situated comparators are sufficient to show discrimination at the pleadings stage and the December 2 Order erred by finding otherwise. While the ultimate determination of whether comparators are similarly situated to a plaintiff is a question of fact for the jury, a discrimination claim is subject to dismissal when the complaint fails to allege facts tending to show that the plaintiff was similarly situated to comparators in the respects relevant to the lawsuit. *See Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1015 (8th Cir. 2013) (holding that a § 1983 discrimination claim was insufficiently pled because the complaint "does not allege facts showing that similarly situated [comparators] were treated differently"); *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190–91 (4th Cir. 2010) (holding that a discrimination claim was insufficiently pled, even where the plaintiff identified a comparator, because there was no plausible basis for inferring the comparator was similarly situated) (cited approvingly for this proposition in *Hager*, 735 F.3d at 1015); *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010) ("[D]ismissal at the pleading stage was appropriate because [the plaintiff] failed to allege facts tending to show that it was similarly situated to any of the comparators.").

For the discrimination claims against the County Defendants, the most specific allegations regarding a comparator are about Unity's competitor Pinnacle. The complaint states that MDH selected Pinnacle to provide services for Unity's clients on Unity's premises during the period of the conditional license. MDH chose Pinnacle at the urging of Hennepin County and Rohr, even though the County Defendants knew: "(1) Pinnacle is a competitor of Unity; and (2) Pinnacle has allegedly had its own licensing and safety issues." These allegations do not support an inference that Pinnacle and Unity were similarly situated at the time of the disparate treatment. There is no allegation that Pinnacle's disciplinary record included punishment as severe as a conditional license barring the admission of new clients. There is also no allegation that Pinnacle's safety issues were of comparable seriousness to Unity's. Thus, the complaint does not show that Pinnacle and Unity were similarly situated with respect to their licensing and safety issues. Indeed, on these facts, the plausible assumption is that Hennepin County recommended Pinnacle to MDH precisely because Pinnacle had less serious licensing and safety issues than Unity.

The complaint also alleges that Defendants did not behave as destructively against Caucasian-owned competitors, even though "many Caucasian owned entities within Hennepin County have received citations by MDH related to their operations" and "some Caucasian owned facilities were found to be repeatedly non-complaint with the home health care rules for periods of 1–3 years." As the December 2 Order found, these allegations are insufficient to show that Plaintiffs and their comparators were similarly situated because the complaint makes no reference to any other comparator being placed on a conditional license, which is a more serious

and public disciplinary action than receiving a citation.[2] Plaintiffs now urge the Court to ignore the difference in the comparators' disciplinary records at the time of the disparate treatment and focus on the underlying conduct that led to the discipline. But the complaint says nothing about the severity of the comparators' misconduct. The complaint refers to the type of punishment that the comparators' received (citations) and the duration of their violations (one to three years), but not the seriousness of the misconduct that led to those punishments and violations. Thus, the complaint does not support an inference that Plaintiffs' and their comparators had similar disciplinary records or that they had engaged in similarly egregious misconduct.

Because the complaint does not plausibly suggest that Plaintiffs and their comparators were similarly situated in the respects relevant to the lawsuit, the race-based discrimination claims fail. The §§ 1981, 1985(3), and 2000(d) claims also fail for the additional reasons provided with respect to each cause of action in the December 2 Order. Likewise, the constitutional due process claims fail for the reasons provided in the prior order.

### B. Plaintiffs' State Law Claims

#### 1. Minn. Stat. § 363A.17

Plaintiffs allege that Defendants violated the business discrimination provisions of the Minnesota Human Rights Act (MHRA). Minn. Stat. § 363A.17. The § 363A.17 claim, like the federal race discrimination claims, requires evidence of intentional discrimination. *See Kalema v. U.S. Oil Co.*, No. 05-cv-0323, 2006 WL 2289849, at *2 (D. Minn. Aug. 8, 2006); *see also Rothmeier v. Inv. Advisers, Inc.*, 85 F.3d 1328, 1338 (8th Cir. 1996) ("The Minnesota Supreme Court has held time and again that MHRA claims are to be construed in accordance with federal

---

[2] At the September 4, 2014 hearing, Plaintiffs' counsel stated, "[t]o our knowledge, Unity was the first entity that received the conditional license."

precedent."). Accordingly, the § 363A.17 claim against the County Defendants fails because the complaint does not support an inference of discrimination.

    *2. Defamation*

Plaintiffs bring two counts of defamation. To prove defamation, a plaintiff must show that the defendant made: "(a) a false and defamatory statement about the plaintiff; (b) in unprivileged publication to a third party; (c) that harmed the plaintiff's reputation in the community." *Pope v. ESA Servs., Inc.,* 406 F.3d 1001, 1011 (8th Cir. 2005) (internal quotation marks omitted), *abrogated on other grounds by Torgerson*, 643 F.3d 1031. Federal courts favor specific pleading of defamation claims because "knowledge of the exact language used is necessary to form responsive pleadings." *Asay v. Hallmark Cards, Inc.,* 594 F.2d 692, 699 (8th Cir. 1979). "At a minimum, the plaintiff must allege who made the allegedly libelous statements, to whom they were made, and where." *Pope*, 406 F.3d at 1011 (internal quotation marks omitted).

With respect to Rohr, the complaint is devoid of actionable defamatory statements for which she is responsible. The complaint contains many generalized allegations of defamation, such as that Rohr and others "made false and disparaging comments regarding Plaintiffs' clients, the families and representatives of clients, and others." None of the comments attributable to Rohr contain sufficient factual matter to be actionable.

The only defamatory statements sufficiently pled in the complaint are the ones Stewart, a case manager for Meridian, made about Plaintiffs' treatment of Client A, as discussed in the December 2 Order. Specifically, Stewart is alleged to have defamed Plaintiffs when she "caused to be filed a false police report alleging that Client A was being sexually and possibly physically

8

abused at HWS by a Unity employee," and when she "called an ambulance and demanded that Client A be removed from Unity/HWS because she was endangered and needed a medical examination."

Plaintiffs argue that Hennepin County is responsible for these defamatory statements because Meridian was acting as an agent for the County. "[A]n agency relationship requires (1) manifestation of consent to the relationship by both principal and agent, and (2) right of control by the principal over the agent." *A.P.I., Inc. Asbestos Settlement Trust v. Home Ins. Co.*, 877 F. Supp. 2d 709, 722 (D. Minn. 2012). "[A] principal can be vicariously liable to a third party for the conduct of its agent *only* if the agent would be liable to the third party for that act." *Remodeling Dimensions, Inc. v. Integrity Mut. Ins. Co.*, 819 N.W.2d 602, 615 (Minn. 2012). A principal is not liable for an unauthorized intentional tort of its agent. *Id.*

Hennepin County argues that it should not be liable for Stewart's defamatory statements because, while Meridian may have been an agent for the County, Stewart was not. The County is incorrect. "If a principal is responsible for its agent's actions, the principal is also responsible for the actions of its agent's agents (i.e., the principal's subagents)." *Hartford Fire Ins. Co. v. Clark*, 727 F. Supp. 2d 765, 774 (D. Minn. 2010) (citing Restatement (Third) of Agency § 3.15 cmt. d). Stewart, as Meridian's employee, was Meridian's agent. Thus, if Meridian was Hennepin County's agent, Stewart was the County's subagent, and the County is responsible for Stewart's actions.

In passing, Hennepin County devotes one sentence to quoting the rule that a principal is not liable for an unauthorized intentional tort of its agent. The County provides no argument to support the proposition that Stewart's, or any other subagent's, tort was unauthorized. Thus, the

issue of whether the County authorized its subagent's torts has not been adequately briefed, and the Court expresses no opinion on it. As a result, Plaintiffs' claim that Hennepin County is vicariously liable for Stewart's defamatory statements regarding Plaintiffs' treatment of Client A survives the County's motion.

    3. *Tortious Interference*

Plaintiffs bring both a tortious interference with existing contracts and a tortious interference with prospective contracts claim. Plaintiffs' tortious interference with prospective contracts claim fails for the reasons stated in the December 2 Order—namely, they do not identify clients whose business was lost as a result of the alleged interference. The interference with existing contracts claim requires more analysis. To prevail on the claim, Plaintiffs must show: (1) the existence of a contract; (2) defendants' knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages. *Furlev Sales & Associates, Inc. v. N. Am. Automotive Warehouse, Inc.,* 325 N.W.2d 20, 25 (Minn. 1982).[3]

Plaintiffs assert that Defendants' actions led to them lose "over half of their clients." As found in the December 2 Order, this allegation is too broad to state a claim for tortious interference because it does not identify contracts that were breached or suggest that Defendants knew of the contracts. Plaintiffs' complaint identifies only two clients—Clients A and B—who had contracts with Unity and HWS and whose contracts were breached when they were removed from Unity. The complaint alleges that Stewart wrongfully removed Client A from Unity and Davies and Reid, case managers for People, wrongfully relocated Client B. The December 2

---

[3] As stated in the December 2 Order, Balenger does not allege that she was a party to any contract with the clients. Therefore, her tortious interference claim is dismissed, leaving Unity and HWS to assert the claim.

Order found that the allegations of tortious interference with respect to Clients A and B are sufficient to state a claim.

The complaint does not allege that Rohr removed the clients from Unity or otherwise directly procured the breach of their contracts. Plaintiffs allege that Rohr instructed the case managers to relocate their clients. But the complaint lacks specific facts suggesting there was a meeting of the minds or community of purpose among Rohr and the case managers, which is necessary for Rohr to be liable as a co-conspirator. *See Bloom v. Hennepin County*, 783 F. Supp. 418, 446 (D. Minn. 1992). Thus, the tortious interference with contracts claim against Rohr fails.

The claim survives against Hennepin County, though. The County can be vicariously liable for the case managers' tortious interference with Unity's and HWS's contracts with Clients A and B because the case managers are allegedly subagents of the County, as explained above.

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants' motion for judgment on the pleadings [Docket No. 149] is GRANTED IN PART and DENIED IN PART as follows:
    a. The motion is DENIED as to the claim that Hennepin County is vicariously liable for defamatory statements about Plaintiffs' treatment of Client A.
    b. The motion is DENIED as to the claims that Hennepin County is vicariously liable for the tortious interference with Unity's and HWS's contracts with Clients A and B.
    c. In all other respects, the motion is GRANTED and the claims DISMISSED.

Dated:  May 5, 2015

                                              s/Joan N. Ericksen
                                              JOAN N. ERICKSEN
                                              United States District Judge